ANNIE T. E. KIRTLAND, PLAINTIFF IN ERROR, v. LOUIS McCLOUD, RECEIVER OF TAXES ET AL., DEFENDANTS IN ERROR.

Argued July 11, 1910—Decided November 14, 1910.

A township transferred in 1897 to the Essex park commission existing under the act of 1895 (*Gen. Stat., p.* 2618), the care, custody and control of an avenue which had been controlled by the Essex public road board, so far as the same was within the territory and under the control of the township, only to the extent and for the purposes expressed and limited by the act of 1895 and of the supplements and amendments thereto; subsequently, and after the passage of the amendment of March 20th, 1899 (*Pamph. L., p.* 92), the township became incorporated as a city under the act of March 24th, 1899 (*Pamph. L., p.* 283). *Held,* that the city was without power to construct a sidewalk along the avenue and assess for special benefits.

On error to the Supreme Court.

For the plaintiff in error, *Freeman Woodbridge* (*Woodbridge & March* on the brief).

For the defendant in error, *Jerome D. Gedney.*

The opinion of the court was delivered by

SWAYZE, J. The important and fundamental question involved in this case is whether the control of the sidewalks along Park avenue in the city of East Orange is in the Essex county park commission or in the city. Park avenue was formerly controlled by the Essex public road board under the act of 1870 (*Pamph. L., p.* 181), of which the court will take judicial notice. *Rader* v. *Township of Union,* 10 *Vroom* 509. This act reserved to the local authorities the power to curb and flag sidewalks, excepting where the curbing and flagging had been taken up and had to be relaid to conform to the road board's plans. *Carroll* v. *Irvington,* 21 *Id.* 361. The act creating the Essex county park commis-

sion (*Gen. Stat., p.* 2618) by section 18 (*Gen. Stat., p.* 2625)
authorized any city or municipality or local board in a city or
municipality having control of the parks or streets therein,
to transfer the care, custody and control of any park, public
place or street under its care or control to the park commis-
sioners for the purposes of the act. The township of East
Orange, to which the city of East Orange succeeded in 1899,
by an ordinance approved April 12th, 1897, transferred to
the park commission the care, custody and control of Park
avenue, so far as the same was within the territory and under
the control of the township of East Orange, only to the extent
and for the purposes expressed and limited by the provision
of the act of 1895, above referred to, and of the supplements
and amendments thereto. There was a clause reserving the
rights and powers of the municipality with respect to terri-
torial jurisdiction, police power and the control of street rail-
way franchises; and the ordinance provided that the transfer
should not operate to take away from the governing body of
the municipality any rights or powers respecting the laying
down, construction, maintenance and repair of sewers, gas
pipes, water pipes, conduits, cables and wires for telegraph
and telephone service or electric light, but that all such
rights and powers should remain and be exercised under suit-
able and proper regulations to be established by the concur-
rent action of the township committee and of the park com-
mission with a view to the accommodation of the township
and its citizens and to the protection of the improvements
that should be made by the park commission in the develop-
ment of the avenue. The fact that the powers reserved to
the municipality were so specifically enumerated, and that
the power to lay, curb and flag sidewalks was not included
therein indicates that it was the intent of the municipality to
transfer to the park commission the control of the sidewalks
so far as might be necessary for these purposes. It is argued,
however, that the act of 1895 authorized a transfer for the
purposes of the act and that the ordinance itself limited the
transfer to those purposes. The purpose of the act was, in
accordance with the requirement of the constitution, expressed

in its title to be to establish public parks in certain counties and to regulate the same. As an incident to that purpose the board was given power to connect roads, parks or public open spaces with other parks or public open spaces and with any city or municipality of the county by a suitable roadway or boulevard, with power for that purpose to acquire lands, although the lands so taken or any part thereof might already be a street or way, and to construct and maintain roadways, parkways or boulevards, provided that the concurrence of the common council or other body having authority over highways should be necessary to take or appropriate any portion of an existing street or road. *Gen. Stat., p.* 2618, *pl.* 49. Section 6 of the act (*Gen. Stat., p.* 2620, *pl.* 53) gave the park commission power and authority not only to lay out and open roadways, parkways and boulevards connecting parks and open spaces, as provided in the act, but also authority to establish the grade of the highways, to change and alter the same; to grade, curb, flag, pave and otherwise improve said parkways, roadways and boulevards and to regulate the use thereof. These citations from the act are sufficient to show that its purpose was the establishment of parks and connecting boulevards or parkways to be controlled by the park commission; and in view of the fact that the only bodies having any control of Park avenue were the board of chosen freeholders of the county of Essex, which had succeeded to the rights and powers of the Essex public road board, and the township of East Orange, we think that a cession by these bodies vested in the park commission entire control of the avenue. It is beside the mark to argue that because section 6 may be construed to mean that the power to curb and flag was limited to roadways, parkways and boulevards which had been laid out and opened by the park commission, therefore the municipality retained the right to lay sidewalks. That construction of the section would be inconsistent with the control of the entire avenue by the park commission. It would be, on the other hand, entirely consistent to hold, if it were necessary so to do, that the park commission has control of the avenue, but is without

power to curb and flag the sidewalks; the legislature might well have intended that parkways and boulevards of this character should differ from ordinary streets; a sidewalk may be quite essential to a city street but be unnecessary in a boulevard running through the country and connecting parks and open spaces or running from one municipality to another, as the act contemplates. The only power which the township of East Orange possessed in Park avenue was the control of the sidewalks. A transfer of the avenue to the park commission transferred the sidewalks or was entirely without force. The transfer by the ordinance of 1897, however, was not limited to the purpose of the Park Commission act as it then stood, for the ordinance expressly states that the transfer is for the purposes expressed and limited in the act of 1895 "and of the supplements and amendments thereto." No supplement or amendment had been passed by the legislature prior to the date of the ordinance. The only supplements and amendments that could have been intended are those subsequently passed, and the only one of present importance is that of 1899 (*Pamph. L., p.* 92), which amended section 2 of the original act. By this amendment the park commission was given power to connect any road, park or public open space with any other park or public open space and with any city or municipality of the county by a suitable road or boulevard, and for that purpose to acquire land, although the land so taken or any part thereof might already be a street or way, and to construct and maintain along, across and upon and over the same or any other land acquired by the board under the act, roadways, parkways or boulevards, to grade and improve the same, to regulate the width thereon of sidewalks, and to construct such sidewalks. This power seems to be ample to cover the present case, and under this act the park commission not only has the control of the whole width of the avenue but has power to construct sidewalks. The city of East Orange was not incorporated until after the approval of this act, for it is stipulated that it was incorporated under the act of March 24th, 1899, approved four days later. At the time the city came into being, therefore, the park com-

mission had the exclusive control of Park avenue. The power of the city to levy assessments under section 70 of the act applies only to improvements which the municipality was authorized to make. Manifestly the city could not levy a special assessment for an improvement of a street which was controlled by another corporation. The Park Commission act provides for an assessment of special benefits for improvements (*Gen. Stat., p.* 2631, *pl.* 54), and it could never have been the legislative intent to authorize another body to levy such an assessment.

The only remaining question is whether the prosecutor is barred of his remedy by laches. It suffices to say, without discussing any other phase of this objection, that the dismissal of a writ of *certiorari* for laches is addressed to the discretion of the Supreme Court, and that this court will not review the exercise of that discretion, whether it be in favor of or against the issuance of the writ. *State* v. *French,* 4 *Zab.* 736; *Atlantic City Water Works Co.* v. *Reed,* 21 *Vroom* 665. In the present case the Supreme Court dealt with the question of laches so far as it affected the proceedings for the improvement itself. It refrained, however, from finding that there had been any laches in the proceedings to review the assessment, and on the contrary, disposed of that question upon the merits. It must, therefore, have been of the opinion that, as far as the assessment was concerned, the prosecutor had acted with sufficient promptness.

The view we take is adverse to that taken by the Supreme Court upon the merits, and the judgment must, therefore, be reversed, in order that a judgment may be entered setting aside the assessment.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, BOGERT, VREDENBURGH, VROOM, DILL, CONGDON, JJ. 12.